IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ZUCCO PARTNERS, LLC; REX            CV 04-1390-BR
BOGGS; KENNARD MCADAM; and
GLEN THOMAS, on behalf of            OPINION AND ORDER
themselves and all others
similarly situated,

       Plaintiffs,

v.

DIGIMARC CORP., BRUCE DAVIS,
and E.K. RANJIT,

       Defendants.


GARY M. BERNE
DAVID F. REES
MARK A. FRIEL
Stoll Stoll Berne Lokting & Shlachter P.C.
209 Oak Street
Suite 500
Portland, OR  97204
(503) 227-1600


1 - OPINION AND ORDER

**LORI G. FELDMAN**
Milberg Weiss Bernshad & Schulman LLP
One Pennsylvania Plaza
New York, NY  10119-0165
(212) 594-5300

        Attorneys for Plaintiffs

**BARNES H. ELLIS**
**LOIS O. ROSENBAUM**
**ROBIN B. SKARSTAD**
Stoel Rives LLP
900 S.W. Fifth Avenue
Suite 2600
Portland, OR  97204
(503) 224-3380

        Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion to Dismiss (#75) Plaintiffs' First Amended Complaint.  For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss and grants Plaintiffs leave to replead.


## PROCEDURAL BACKGROUND

    On September 28, 2004, Plaintiffs filed a class-action Complaint in this Court on behalf of all persons who purchased publicly traded securities of Digimarc Corporation between April 17, 2002, and July 28, 2004 (the class period).  Plaintiffs allege Defendants Digimarc; Bruce Davis, Digimarc's Chief Executive Officer; and E.K. Ranjit, Digimarc's Chief Financial Officer, violated §§ 10(b) and 20(a) of the Securities Exchange

Act of 1934 and the regulations promulgated thereunder including Rule 10b-5.

On May 16, 2005, Plaintiffs filed a First Amended Class Action Complaint that contained the same allegations as those in their original Complaint, but Plaintiffs shortened the class period to April 22, 2003, through July 28, 2004.

On June 15, 2005, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint. The Court heard oral argument on Defendants' Motion on October 3, 2005, and took the Motion under advisement.

## BACKGROUND

In their First Amended Complaint, Plaintiffs allege Defendants knowingly or recklessly "issued or caused to be issued" false and misleading statements during the class period that caused the value of Digimarc stock to be artificially inflated. Plaintiffs contend Defendants, throughout the class period, (1) improperly capitalized research and development expenses, (2) failed to expense charges to write off or to write down obsolete inventory, and (3) improperly capitalized payroll expenses in violation of Generally Accepted Accounting Principles (GAAP).

Plaintiffs also allege virtually every financial statement, press release, or announcement made by Defendants during the

class period was false or misleading because these statements and releases contained predictions of growth and did not reveal Digimarc's improper capitalization of expenses and failure to write down inventory. Plaintiffs contend they purchased Digimarc stock at inflated prices because of Defendants' false or misleading statements. After Defendants allegedly disclosed Digimarc's true financial status to the market in press releases on January 20, 2004, and July 28, 2004, Plaintiffs assert the value of Digimarc's stock dropped, which, in turn, caused Plaintiffs' alleged injury.

## **STANDARDS**

Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim "is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004)(citation omitted). A court must limit its review to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998). When reviewing the sufficiency of the complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may

appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *McGary*, 386 F.3d at 1261 (internal quotation and citation omitted).

In addition, if a court dismisses a claim pursuant to Rule 12(b)(6), the court must grant leave to amend unless the court determines the allegation of other facts consistent with the operative pleading could not possibly cure the deficiency. *Schreiber Distrib. Co. v. Serv-Well Furn. Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). *See also Reddy v. Litton Indus.*, 912 F.2d 291 (9th Cir. 1990).

## DISCUSSION

Plaintiffs bring two claims against Defendants arising from (1) violations by all Defendants of § 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder and (2) violations by the individual Defendants of § 20(a) of the Securities Exchange Act.

Defendants move to dismiss Plaintiffs' First Amended Complaint on the grounds that (1) Plaintiffs have not satisfied the loss-causation pleading requirements of the Securities Exchange Act and (2) Plaintiffs have not met the stringent pleading standards of the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b)(1) and (2).

## I.  Plaintiffs Have Pled Loss Causation Sufficiently.

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful "for any person . . . to use or employ in connection with the purchase or sale of an security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."  15 U.S.C. § 78(b).  Pursuant to the Securities Exchange Act, the Securities and Exchange Commission (SEC) promulgated Rule 10b-5, which provides:

> It shall be unlawful for any person, . . .
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In a Rule 10b-5 claim, a plaintiff must prove:

> (1) a material misrepresentation (or omission),
> (2) scienter, i.e., a wrongful state of mind,
> (3) a connection with the purchase or sale of a
> security,(4) reliance, often referred to in cases
> involving public securities markets (fraud-on-
> the-market cases) as "transaction causation,"
> (5) economic loss, and (6) "loss causation," i.e.,
> a causal connection between the material
> misrepresentation and the loss.

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. ____, 125 S. Ct. 1627, 1631 (2005)(internal citations omitted).

**A.  Loss Causation under the Securities Exchange Act**

The Supreme Court has defined loss causation as "the causal connection between the material misrepresentation and the loss." *Dura*, 125 S. Ct. at 1631.  In *Dura*, the class of plaintiffs bought stock in Dura Pharmaceuticals on the public market during the class period. *Id*. at 1629.  On the last day of the class period, Dura announced its earnings would be lower than expected due to slow drug sales. *Id*.  In response to this announcement, the price of Dura Pharmaceutical stock dropped by nearly 50%. *Id*.  When Dura announced the Federal Drug Administration (FDA) would not approve its products, Dura's stock price temporarily fell again, but the price almost fully recovered within one week. *Id*.  The plaintiffs alleged Dura made false statements during the class period about its profits and the prospects for FDA approval of its products.  Relying on those statements, the plaintiffs asserted they "paid artificially inflated prices for Dura securities [and] . . . suffered damage thereby." *Id*.  The Ninth Circuit held the plaintiffs had pled loss causation sufficiently.  The Supreme Court reversed.

The Supreme Court explained, "[A]n inflated purchase price will not itself constitute or proximately cause the relevant economic loss" because the plaintiffs' injury did not

necessarily occur at the time they purchased Dura's stock. *Id*.
at 1631-32.  For example, if plaintiffs had sold their stock
immediately after purchasing it at the inflated price and before
Dura's situation was disclosed to the market, the plaintiffs
might not have suffered any economic injury. *Id*.  The Supreme
Court noted its holding did not mean Fed. R. Civ. P. 8(a)(2) does
not govern the sufficiency of a plaintiff's pleading of loss
causation.  Rather the Court pointed out that a pleading of loss
causation must comply with Fed. R. Civ. P. 8(a), which requires
only a "short and plain statement of the claim showing that the
pleader is entitled to relief."  125 S. Ct. at 1634.  The Court
found, however, the plaintiffs' allegation that they purchased
their shares at an artificially inflated price did not give the
defendants "fair notice of what the plaintiffs' claim [was] and
the grounds upon which it rest[ed]." *Id*. at 1634 (quoting *Conley
v. Gibson*, 355 U.S. 41, 47 (1957)).  The Court found the
plaintiffs failed (1) to allege that Dura's share price fell by a
significant amount after Dura disclosed the truth about its
financial condition, (2) to specify their relevant economic loss,
and (3) to describe the causal connection between their loss and
Dura's misrepresentations. *Id*. at 1634.

        After *Dura*, the Ninth Circuit held in *In Re Daou
Systems, Inc.,* that the plaintiffs had pled loss causation
adequately because their allegations were "sufficient to provide

Daou with some indication that the drop in Daou's stock price was causally related to Daou's financial misstatements reflecting its practice of prematurely recognizing revenue before it was earned." 411 F.3d 1006, 1026 (9th Cir. 2005).

In *Daou*, the plaintiffs alleged the defendants systematically violated GAAP by prematurely recognizing revenue in order to artificially inflate the price of Daou stock. *Id*. at 1026. The plaintiffs further alleged they "would not have purchased their shares at the inflated prices if they had known of Daou's true financial condition." *Id*. The district court found the plaintiffs failed to show a causal connection between the alleged fraud and the decline in share price because the plaintiffs did "not allege [in their complaint] that there were any negative public statements, announcements, or disclosures at the time the stock price dropped that Defendants were engaged in improper accounting practices." *Id*. at 1026. After "an independent assessment" of the complaint, however, the Ninth Circuit noted the plaintiffs alleged the price of Daou's stock "fell precipitously after defendants began to reveal figures showing the company's true financial condition." *Id*. In their complaint, the plaintiffs also alleged Daou revealed on August 13, 1998, that its operating expenses and margins were deteriorating and revealed on October 28, 1998, that it was going to miss its earnings per share due in part to an "escalating work

in progress account . . . *the direct result of prematurely recognizing revenue*." *Id*. (emphasis in original). The Ninth Circuit found plaintiffs sufficiently alleged loss causation. *Id*. The Ninth Circuit further noted the plaintiffs did not have to show the "misrepresentation was the *sole* reason for the investment's decline in value" as long as the plaintiffs alleged misrepresentation was "one substantial cause of the investment's decline in value." *Id*. at 1025 (emphasis in original; citation omitted).

**B.   Plaintiffs' Allegations of Loss Causation**

Here Defendants contend Plaintiffs have not sufficiently pled loss causation because Plaintiffs do not allege in their First Amended Complaint that Defendants made corrective disclosures directly related to the alleged fraud that preceded a significant decline in the value of Digimarc's stock. In support of their contention, Defendants rely on *In Re: Initial Public Offering*, CV MDL 1554(SAS), 2005 WL 1162445, at *3 (S.D.N.Y. May 6, 2005).

To establish loss causation in the Second Circuit, the district court noted in *Initial Public Offering* that "a plaintiff must allege . . . the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the

security." *Id.*, at *3 (emphasis in original). The district court held the Plaintiff failed to allege loss causation sufficiently because the defendants never disclosed their fraudulent scheme to the market notwithstanding the fact that the defendants released reports of quarterly revenues that failed to meet forecasts. *Id.*

Although the Supreme Court in *Dura* did not define the pleading standard for loss causation other than that it must comply with Fed. R. Civ. P. 8(a)(2), the Court made it clear that the complaint only has to "provide the defendant with *some indication* of the loss and the causal connection that the plaintiff has in mind." 125 S. Ct. at 1634 (emphasis added).

Consistent with *Dura*, the Ninth Circuit in *Daou* rejected the pleading requirements set forth in *Initial Public Offering* and required only that plaintiffs allege facts that provide defendants "with *some* indication that the drop in [the defendant's] stock price was causally related to [the defendant's] financial misstatements." *Daou*, 411 F.3d at 1026 (emphasis added).

Here Plaintiffs allege Defendants artificially inflated Digimarc's income by (1) improperly capitalizing research and development expenses, (2) failing to expense charges to write off or to write down obsolete inventory, and (3) improperly capitalizing payroll expenses. Plaintiffs further allege

Digimarc disclosed its true financial condition to the market on January 20, 2004, and on July 28, 2004.

In the January 20, 2004, press release, Digimarc informed the public that Digimarc expected its total revenues for the quarter ended December 31, 2003, to be approximately $5-6 million less than previously expected.  In the July 28, 2004, press release, Digimarc informed the public that it was going to have lower earnings per share (EPS) than predicted.  Digimarc attributed the lower-than-expected EPS to numerous factors, including

> *inventory charges*, variances to expense forecasts, and an unfavorable revenue mix.  Specifically, *the company recorded inventory reserves related to product life cycles and impairment charges for spare parts on hand deemed to be in excess of future usage needs;* incurred unplanned production start-up yield losses and higher than expected delivery costs for services provided; and, experienced a revenue mix change from expected higher-margin consumables.

Plaintiffs assert Digimarc's stock price fell 11% and 25% respectively after these press releases revealed Digimarc's true financial condition.

The Court finds these allegations provided Defendants "with fair notice of what [Plaintiffs'] claim is and the grounds upon which it rests."  *See Dura*, 125 S. Ct. at 1634.  Accordingly, the Court concludes Plaintiffs's First Amended Complaint sufficiently shows a causal connection between Defendants' alleged misrepresentations and the subsequent decline

12 - OPINION AND ORDER

in Digimarc's stock under the standards set forth in *Dura* and *Daou*.

## II. Plaintiffs Have Not Met the Pleading Standards of the PSLRA.

### A. Scienter Pleading under the PSLRA

Claims brought under Rule 10b-5 and § 10(b) of the Securities Exchange Act must meet the particularity requirements of Fed. R. Civ. P. 9(b) and the PSLRA. *Daou*, 411 F.3d at 1014 (citing *Smegen v. Weidner*, 780 F.2d 727, 729, 734-35 (9th Cir. 1985)).

Fed. R. Civ. P. 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." In 1995, however, Congress, enacted the PSLRA and significantly altered the pleading requirements in private securities litigation actions to require complaints to "plead with particularity both falsity and scienter." *Daou*, 411 F.3d at 1014 (citations omitted).

To satisfy the requirements of the PSLRA, securities fraud complaints must

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).  Securities fraud complaints must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  "[T]he complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness."  Daou, 411 F.3d at 1015 (citing *In Re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)).

"Reliance on confidential witnesses is not *per se* improper under the PSLRA, notwithstanding its requirement that a plaintiff plead 'all facts' when making allegations based on information and belief."  *In Re Northpoint Commc'n Group, Inc., Sec. Litig*, 221 F. Supp. 2d 1090, 1097 (N.D. Cal. 2002)(citing *In Re McKesson HBOC, Inc., Sec. Litig.*, 126 F. Supp. 2d 1248, 1271 (N.D. Cal. 2000)).  "To contribute meaningfully toward a 'strong inference' of scienter, however, allegations attributed to unnamed sources must be accompanied by enough particularized detail to support a reasonable conviction in the informant's basis of knowledge."  *Northpoint*, 221 F. Supp. 2d at 1097 (citing *In Re Silicon Graphics*, 183 F.3d at 985).

## B.   Plaintiffs' Allegations of Scienter

Plaintiffs allege Defendants knowingly or recklessly violated the Securities Exchange Act by issuing or causing to be issued false financial statements.  To support their allegations

of scienter, Plaintiffs point to (1) the fact that the individual Defendants were "closely monitoring" the business operations and, therefore, should have known violations of GAAP were occurring; (2) the statements of six confidential witnesses; and (3) the fact that the individual Defendants sold Digimarc stock during the class period.

### 1. Closely Monitoring Business Operations

Plaintiffs contend Defendants were "closely monitoring" their business operations and, therefore, should have known violations of GAAP were occurring. Plaintiffs assert Defendants' conduct demonstrates scienter. The Ninth Circuit, however, has held a plaintiff's allegations that the defendants' violation of GAAP was "so obvious" that the defendants "must have been aware of it" were insufficient to support the scienter pleading requirements of the PSLRA. *Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425-26 (9th Cir. 1994). The Court, therefore, finds Plaintiffs' allegation is not sufficient to demonstrate scienter.

### 2. Confidential Witness Statements

In their First Amended Complaint, Plaintiffs also refer to statements of six confidential witnesses to support Plaintiffs' allegations of scienter. The Court finds, however, these confidential witness statements as described by Plaintiffs in their First Amended Complaint do not set forth facts sufficient to show the state of mind of the individual

Defendants.

For example, Plaintiffs allege confidential witness one (CW1) worked at Digimarc in its information technology (IT) department on Digimarc's accounting system software. CW1 explained Defendant Ranjit required the IT department to take the information out of Digimarc's integrated accounting system during the quarterly accounting periods and put the data in spreadsheets to enable senior management to analyze the financial data before closing the books for the quarter. Although CW1 was not involved in the accounting process, he believes the "real purpose" of this process was "to allow Ranjit to determine what purported improper accounting 'adjustments' were needed for the Company to meet . . . expectations."

Plaintiffs also allege confidential witness two (CW2) was in Digimarc's IT department and worked on Digimarc's accounting system. CW2 was told by "senior finance personnel" to create a separate database to track inventory because the accounting system was not working properly. CW2 believes the system was working properly, but "Ranjit and Davis simply did not like the results, which showed much lower inventory value than defendants desired."

The opinions of CW1 and CW2 are based on speculation. The record reflects neither CW1 nor CW2 was involved in the actual accounting process or the process of closing the

accounting records. CW1's belief that Ranjit requested data in spreadsheet form for a different purpose than stated by Ranjit is mere speculation. Similarly, CW2's extrapolation from conversations with "senior financial personnel" that Ranjit and Davis did not like the inventory tracking system results is speculative.

Plaintiffs' allegations based on confidential witness three (CW3) are similarly unpersuasive as to the state of mind of Ranjit and Davis. CW3 was a financial analyst at Digimarc. Plaintiffs allege CW3 was told by Claudia Rao that she was directed by "senior management" (who, in turn, allegedly was directed by Ranjit) to book purchases to the wrong project for the purpose of capitalizing those purchases. This triple hearsay, however, is inadmissible. Plaintiffs also allege Jennifer Walden told CW3 that Indra Paul instructed employees to assign more time to projects that could be capitalized. This allegation, however, does not go to the state of mind of either Ranjit or Davis.

Confidential witnesses four and five were not employed by Digimarc after 2002. Thus, their opinions as to why Digimarc did certain things in 2003 and 2004, which was well after the period of their employment with Digimarc, are speculative. As noted, opinions that are merely speculative are not sufficient to demonstrate scienter.

Finally, confidential witness six (CW6) was a vice president of Digimarc's ID Systems and was responsible for purchasing, distributing, and tracking inventory. CW6 allegedly knew Ranjit and Paul Gifford would "fine tune" the ID Systems numbers before rolling them into the corporate financials. This allegation, however, does not demonstrate any evidence of fraudulent intent on the part of Ranjit. Although Plaintiffs include a number of other statements by CW6, none of these statements contains any evidence of scienter by either Ranjit or Davis.

### 3. Individual Defendants' Stock Sales During the Class Period

As further evidence of scienter, Plaintiffs allege Davis sold 4.5% of his Digimarc stock and Ranjit sold 48% of his Digimarc holdings during the class period. Plaintiffs also allege the timing of these sales is suspicious because the sales occurred in May and June 2003, which was "only weeks after Digimarc began using accounting manipulations."

Unusual or suspicious stock sales by corporate insiders may constitute circumstantial evidence of scienter. Insider trading, however, constitutes circumstantial evidence only when it is "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *In Re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d at 986 (citing *In Re Apple Computer Sec.*

*Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989)).  Among the relevant factors the Court may consider are:  (1) the amount and percentage of shares sold by insiders, (2) the timing of the sales, and (3) whether the sales were consistent with the insider's prior trading history.  *In Re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d at 986 (citation omitted).

In their First Amended Complaint, Plaintiffs do not include any information regarding the trading history of either Ranjit or Davis prior to the class period.  Without such history, Plaintiffs' allegations of stock sales by the individual Defendants do not provide evidence of scienter.

In addition, Plaintiffs do not allege facts sufficient for this Court to presume or to infer Ranjit and Davis had the required scienter set out in the PSLRA.  *See In Re Silicon Graphics, Inc., Sec. Litig.,* 183 F.3d at 985 ("[The plaintiff] would have [the court] speculate as to the basis for the allegations about the reports, the severity of the problems, and the knowledge of the officers.  We decline to do so.").

Accordingly, the Court concludes Plaintiffs have failed to plead scienter with sufficient particularity as required by Fed. R. Civ. P. 9(b).


## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Rule

12(b)(6) Motion to Dismiss (#75) Plaintiffs' First Amended Complaint.

The Court also **GRANTS** Plaintiffs leave to file a Second Amended Complaint consistent with this Opinion and Order no later than December 30, 2005.  If Plaintiffs choose not to file a Second Amended Complaint, the Court will dismiss this matter on December 30, 2005.

IT IS SO ORDERED.

DATED this 30th day of November, 2005.


        /s/ Anna J. Brown
ANNA J. BROWN
United States District Judge