IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ZUCCO PARTNERS, LLC; REX                04-CV-1390-BR
BOGGS; KENNARD MCADAM; and
GLEN THOMAS, on behalf of               OPINION AND ORDER
themselves and all others
similarly situated,

        Plaintiffs,

v.

DIGIMARC CORP., BRUCE DAVIS,
and E.K. RANJIT,

        Defendants.


GARY M. BERNE
DAVID F. REES
MARK A. FRIEL
Stoll Stoll Berne Lokting & Shlachter P.C.
209 Oak Street
Suite 500
Portland, OR  97204
(503) 227-1600


1 - OPINION AND ORDER

**LORI G. FELDMAN**
Milberg Weiss Bernshad & Schulman LLP
One Pennsylvania Plaza
New York, NY  10119-0165
(212) 594-5300

      Attorneys for Plaintiffs

**BARNES H. ELLIS**
**LOIS O. ROSENBAUM**
**ROBIN B. SKARSTAD**
Stoel Rives LLP
900 S.W. Fifth Avenue
Suite 2600
Portland, OR  97204
(503) 224-3380

      Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion to Dismiss (#101) Plaintiffs' Second Amended Class Action Complaint. For the following reasons, the Court **GRANTS** Defendants' Motion.


## PROCEDURAL BACKGROUND

    On September 28, 2004, Plaintiffs filed a Class Action Complaint in this Court on behalf of all persons who purchased publicly traded securities of Defendant Digimarc Corporation between April 17, 2002, and July 28, 2004 (the class period). Plaintiffs alleged Defendants Digimarc; Bruce Davis, Digimarc's Chief Executive Officer (CEO); and E.K. Ranjit, Digimarc's Chief Financial Officer (CFO), violated §§ 10(b) of the Securities Exchange Act of 1934 and the regulations promulgated thereunder

2 - OPINION AND ORDER

including Rule 10b-5 and, in addition, Davis and Ranjit violated § 20(a) of the Securities and Exchange Act.

On May 16, 2005, Plaintiffs filed a First Amended Class Action Complaint that contained the same allegations and claims as those in their original Complaint, but Plaintiffs shortened the class period to April 22, 2003, through July 28, 2004.  On June 15, 2005, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint.  The Court heard oral argument regarding Defendants' Motion on October 3, 2005.  On November 30, 2005, the Court granted Defendants' Motion to Dismiss the First Amended Complaint on the ground that Plaintiffs had not pled the scienter component of fraud with the particularity required by the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b)(1) and (2).  The Court granted Plaintiffs leave to file a second amended complaint.

On January 17, 2006, Plaintiffs filed a Second Amended Complaint.  On February 14, 2006, Defendants filed a Motion to Dismiss the Second Amended Complaint on the ground that Plaintiffs again failed to plead the scienter component of fraud with the requisite particularity.  The Court heard oral argument regarding Defendants' Motion on June 7, 2006, and took the Motion under advisement.

## GENERAL BACKGROUND

In their Second Amended Complaint, Plaintiffs allege Defendants knowingly or recklessly "issued or caused to be issued" false and misleading statements during the class period that caused the value of Digimarc stock to be artificially inflated.  Plaintiffs contend Defendants throughout the class period (1) improperly capitalized research and development expenses, (2) failed to expense charges to write off or to write down obsolete inventory, and (3) improperly capitalized payroll expenses in violation of Generally Accepted Accounting Principles (GAAP).

Plaintiffs allege virtually every financial statement, press release, or announcement made by Defendants during the class period was false or misleading because these statements and releases contained predictions of growth and did not reveal Digimarc's improper capitalization of expenses and failure to write down inventory.  Plaintiffs contend they purchased Digimarc stock at inflated prices because of Defendants' false or misleading statements.  Finally, Plaintiffs assert the value of Digimarc's stock dropped after Defendants allegedly disclosed Digimarc's true financial status to the market in press releases on January 20, 2004, and July 28, 2004, which, in turn, caused Plaintiffs' alleged injury.

4 - OPINION AND ORDER

## STANDARDS

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim "is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004)(citation omitted).  A court must limit its review to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party.  *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998).

In addition, if a court dismisses a claim pursuant to Rule 12(b)(6), the court must grant leave to amend unless the court determines the allegation of other facts consistent with the operative pleading could not possibly cure the deficiency. *Schreiber Distrib. Co. v. Serv-Well Furn. Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  *See also Reddy v. Litton Indus.*, 912 F.2d 291 (9th Cir. 1990).

## DISCUSSION

In their Second Amended Complaint, Plaintiffs bring two claims:  (1) all Defendants violated § 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder and (2) the individual Defendants violated § 20(a) of the Securities Exchange Act.

Defendants move to dismiss Plaintiffs' Second Amended Complaint on the ground that Plaintiffs have not met the stringent pleading standards required by the PSLRA, 15 U.S.C. § 78u-4(b)(1) and (2).

## I.   The Law

Claims brought under Rule 10b-5 and § 10(b) of the Securities Exchange Act must meet the particularity requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA.  *In re Daou Sys.*, 411 F.3d 1006, 1014 (9th Cir. 2005)(citing *Smegen v. Weidner*, 780 F.2d 727, 729, 734-35 (9th Cir. 1985)).

Rule 9(b) provides:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  In 1995, however, Congress enacted the PSLRA and significantly altered the pleading requirements in private securities-litigation actions to require plaintiffs to "plead with particularity both falsity and scienter."  *Id.* (citations omitted).

To satisfy the requirements of the PSLRA, securities-fraud complaints must

> specify each statement alleged to have been
> misleading, the reason or reasons why the
> statement is misleading, and, if an allegation
> regarding the statement or omission is made on
> information and belief, the complaint shall state

with particularity all facts on which that belief
is formed.

15 U.S.C. § 78u-4(b)(1).  Securities-fraud complaints also must
"state with particularity facts giving rise to a *strong* inference
that the defendant acted with the required state of mind."  15
U.S.C. § 78u-4(b)(2)(emphasis added).  "[T]he complaint must
allege that the defendants made false or misleading statements
either intentionally or with deliberate recklessness." *Daou*, 411
F.3d at 1015 (citing *In Re Silicon Graphics, Inc., Sec. Litig.*,
183 F.3d 970, 974 (9th Cir. 1999)).  Recklessness is defined as a
highly unreasonable omission that involves an extreme departure
from the standards of ordinary care rather than simple or even
inexcusable negligence and that presents a danger of misleading
buyers or sellers that is either known to the defendant or is so
obvious the actor must have been aware of it.  *DSAM Global Value
Fund v. Altris Software, Inc*., 288 F.3d 385, 389 (9th Cir. 2002).

There is tension between the inferences the Court must make
when considering a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6) and the PSLRA's heightened pleading standard.
As the court explained in *In re Metawave Communications
Corporation*:

> On one hand, the Court must accept all allegations
> of material fact as true and construe them in the
> light most favorable to the Plaintiff.  However,
> in determining whether there has been a strong
> inference of scienter, the Court must consider
> "all reasonable inferences to be drawn from the
> allegations, including inferences unfavorable to

the plaintiffs." *America West*, 320 F.3d at 938 (quoting *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002))(emphasis in original).  These statements appear to be contradictory, but the tension can be resolved by accepting a plaintiffs' allegations as true and viewing them in the light most favorable to the plaintiff, except when determining whether scienter has been adequately pled, in which case the Court can draw inferences both favorable and unfavorable to the plaintiff. *In re NorthPoint Communications Group, Inc., Sec. Litig.* ("*NorthPoint II*"), 221 F. Supp.2d 1090, 1094 (N.D. Cal. 2002). . . .  If the Court could not draw inferences unfavorable to the plaintiff in determining scienter, the PSLRA's strong inference requirement would be eviscerated, and Congress's basic purpose in enacting the PSLRA would be thwarted. *Gompper*, 298 F.3d at 896-97. The Court . . . *can draw inferences both favorable and unfavorable to the plaintiff* only when determining whether scienter has been adequately pled.

298 F. Supp. 2d 1056, 1066 (W.D. Wa. 2003)(emphasis added).

## II.  Plaintiffs' Rule 10b-5 and § 10(b) Claims

Plaintiffs allege Defendants knowingly or recklessly violated the Securities Exchange Act by issuing or causing to be issued financial statements that were materially false due to improper capitalization of payroll expenses and software-development costs and the failure to write down or write off inventory.

To support their allegations of scienter, Plaintiffs rely on (1) the statements of six confidential witnesses (CWs), (2) Sarbanes-Oxley (SOX) certifications, and (3) sales of Digimarc stock by the individual Defendants during the class period.

8 - OPINION AND ORDER

## A.    Confidential-Witness Statements

"Reliance on confidential witnesses is not *per se* improper under the PSLRA, notwithstanding its requirement that a plaintiff plead 'all facts' when making allegations based on information and belief."  *In Re Northpoint Commc'n Group, Inc., Sec. Litig*, 221 F. Supp. 2d 1090, 1097 (N.D. Cal. 2002)(citing *In Re McKesson HBOC, Inc., Sec. Litig.*, 126 F. Supp. 2d 1248, 1271 (N.D. Cal. 2000)).  "To contribute meaningfully toward a 'strong inference' of scienter, however, allegations attributed to unnamed sources must be accompanied by enough particularized detail to support a reasonable conviction in the informant's basis of knowledge."  *Northpoint*, 221 F. Supp. 2d at 1097 (citing *In Re Silicon Graphics*, 183 F.3d at 985).

### 1.    Capitalization of Payroll Expenses

In its November 30, 2005, Opinion and Order, the Court held Plaintiffs' allegations of scienter were insufficient with respect to the improper capitalization of payroll expenses. Plaintiffs have not made any new allegations relating to scienter with respect to this issue.  Accordingly, for the reasons stated in its November 30, 2005, Opinion and Order, the Court concludes the Second Amended Complaint is deficient with respect to this basis for Plaintiffs' securities-fraud claims.

### 2.    Capitalization of Software-Development Costs

Plaintiffs rely on information from CWs to support

their allegations of scienter with respect to improper capitalization of software-development expenses.

        **a.   CW2**

        CW2, an information technology (IT) employee, alleges Val Ford, who reported to Ranjit, instructed CW2 to reprogram the time-and-expense software to eliminate supervisor approval of time and to allow administrative assistants working in the finance department to enter time for the engineers working on software development rather than having the engineers enter their time directly.  Plaintiffs contend:

> CW2 contacted CW1 who in turn approached Val Ford.  Ford told CW1 that Ranjit had ordered the controls removed.  According to CW1; he/she then sent an email to Ranjit about the elimination of controls in the capitalization of software payroll, and Ranjit responded that it was what Ranjit wanted and that he expected CW1 to take care of it.

This allegation contains double hearsay as CW1 alleges Ford said Ranjit wanted the controls removed, and, therefore, the allegation is not admissible to support an inference of scienter.

        In addition, it is questionable whether it is inherently improper to allow finance personnel access to the payroll system in order to categorize engineers' time spent on software development as ordinary expenses or capital expenses. Capitalization of expenses is an extremely complex accounting issue that finance personnel would understand better than engineers who develop software.  Allowing financial personnel

access to the software-development payroll to capitalize or to expense time may be a legitimate accounting decision.  As the court noted in *Metawave* regarding a motion to dismiss in the context of the PSLRA, the Court must accept Plaintiffs' allegations as true and view them in the light most favorable to the Plaintiffs "except when determining whether scienter has been adequately pled, in which case the Court can draw inferences both favorable and unfavorable to the plaintiffs."  *See Metawave*, 298 F. Supp. 2d at 1066.

The Court could draw various inferences from Digimarc's removal of controls on the software-capitalization software, some favorable to Plaintiffs and some favorable to Defendants.  Accordingly, these allegations do not establish a strong inference of scienter.

### b.    CW3

CW3 alleges Jennifer Walden told CW3 that Indra Paul instructed employees to assign more time to projects that could be capitalized.  In its November 30, 2005, Opinion and Order, the Court held this allegation was based on hearsay.  The Court declines to alter its ruling.

CW3 further alleges he "heard from the implementation project managers that payroll time was being charged improperly . . . so that this time could be capitalized." Again, these allegations are based on hearsay rather than

11 - OPINION AND ORDER

personal knowledge and, therefore, are not probative.  *See Metawave*, 298 F. Supp. 2d at 1068 (citing *In re Commtouch Software Ltd*. *Sec*. *Litig*., No. 01-719, 2002 WL 31417998, at *3 (N.D. Cal. July 24, 2002)).

### 3. Inventory Valuation

Plaintiffs contend Defendants failed to write off or to write down obsolete inventory in violation of GAAP. Plaintiffs contend Defendants (1) set up an inventory database to track Digimarc's inventory outside of the standard Digimarc database so inventory could be manipulated improperly, (2) used improperly low scrap rates, (3) manipulated the value of the inventory to make it appear that Digimarc had more inventory than it actually had, and (4) left obsolete and overvalued inventory on the balance sheet.  Plaintiffs further allege Defendants intended to defraud shareholders.

### a. CW4 and CW5

With respect to CW4 and CW5, the Court noted in its November 30, 2005, Opinion and Order that these confidential witnesses were not employed by Digimarc after 2002. Thus, the Court concluded, their opinions as to why Digimarc took certain actions during the class period in 2003 and 2004 are speculative.  Plaintiffs do not provide any new allegations from CW4 and CW5 that alter the Court's conclusion:  Neither CW4 nor CW5 worked at Digimarc during the period in question, and

Plaintiffs do not allege new facts to suggest CW4 or CW5 can do anything other than speculate about the period at issue.

**b.    CW1**

Plaintiffs allege CW1 was the IT department director, but Digimarc made him the Director of Supply Chain Management[1] and put him in charge of managing inventory. Plaintiffs allege CW1 was involved in implementing Digimarc's inventory-tracking system in 2003 and 2004, supervising the IT Department's efforts to develop a method for counting and tracking inventory, conducting physical inventory counts, and investigating overvalued and obsolete inventory.  Plaintiffs, however, do not allege CW1 is an accountant or that he participated in decisions related to the reporting of financial information.  In fact, in their Second Amended Complaint, Plaintiffs establish CW1 gave his inventory data to Valerie Ford, who, in turn, was responsible for preparing the financial reports.

CW1's allegations are speculative regarding management's accounting decisions regarding the write off or write down of obsolete inventory.  In addition, CW1's allegations are based on hearsay.  For example, Plaintiffs allege:

[A]ccording to CW1, a project accountant for

---

[1] Defendants contend, and Plaintiffs do not deny, CW1 was the Director of Supply Chain Management for less than one month before the end of the class period.

13 - OPINION AND ORDER

the Company, who had been employed by
Polaroid when the ID Systems business unit
was purchased in late 2001, specifically told
Ranjit in December 2001 about the cameras in
inventory at the time that were already
obsolete, . . . CW1 knows this because the
project accountant relayed this conversation
to CW1.

* * *

According to CW1, when he/she raised the
issue regarding the serious problem the
Company had with overvalued inventory around
the beginning of 2004, he/she was told by
Rahoul Banerjea, former Digimarc ID Systems
Vice President of Finance, that the Company
had eliminated all inventory reserves at the
direction of Ranjit so the Company could meet
earnings expectations and that the Company
could not write-down the overvalued inventory
because that would significantly reduce the
Company's reported income and make the
Company miss market expectations.

Second Amended Complaint ¶¶ 59 and 61.

These allegations are based on hearsay and,
therefore, do not meet the PSLRA requirement that confidential
witnesses' allegations must be based on personal knowledge.  In
addition, the Court notes with respect to these allegations that
Digimarc did not restate inventory reserves in its financials.
Plaintiffs, therefore, have not demonstrated either the falsity
of the reserves or the required scienter as to reserves.

CW1 makes only one specific allegation
relating to a financial statement based on personal knowledge:
Ranjit ordered CW1 not to write down inventory before the end of
the second quarter of 2004.  Because Digimarc wrote down obsolete

14 - OPINION AND ORDER

inventory in the second quarter of 2004, however, this allegation does not raise an inference of scienter with respect to Plaintiffs' claims that Digimarc failed to write down inventory.

Plaintiffs make a number of other allegations concerning CW1's conversations with "senior management" about obsolete inventory and inventory control and valuation, but none of these allegations include details such as when the reports were given or when the meetings were held.  Such details are vital for the Court to determine whether the allegations attributed to unnamed sources "support a reasonable conviction in the informant's basis of knowledge." *Northpoint*, 221 F. Supp. 2d at 1097.

In addition, as Defendants note, keeping obsolete inventory on hand can be consistent with GAAP because obsolete equipment may be needed to fill anticipated demand for replacement parts by customers who have older systems. Allegations regarding obsolete inventory equally can support an inference of reckless or knowing violations of GAAP or an inference of compliance with GAAP, and, therefore, these allegations are not strong evidence of scienter. *See In re Metawave*, 298 F. Supp. 2d at 1066 (court "must consider '*all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs.'")(quoting *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West*

15 - OPINION AND ORDER

*Holding Corp.*, 320 F.3d 920, 938 (9th Cir. 2003)(emphasis in original)).

       **c.**    **CW6**

       Plaintiffs also include new allegations related to inventory issues obtained from CW6, a Vice President of Supply Chain Management at Digimarc.  CW6 alleges he "understood that some employees were improperly capitalizing their labor on contracts."  This does not appear to be based on CW6's personal knowledge but instead on something more like gossip or speculation, which is not sufficient evidence of scienter.  *See Metawave*, 298 F. Supp. 2d at 1968 ("The Court must be able to tell whether a confidential witness is speaking from personal knowledge, or merely regurgitating gossip and innuendo.").

       CW6 also alleges "the finance group kept manipulating the unit of measure on [Digimarc's] product," and "there was obsolete inventory."  Neither of these allegations provides a strong inference of scienter with respect to inventory valuation.  As noted, keeping obsolete inventory on the books may conform to GAAP, and the Court must consider all reasonable inferences that can be drawn from Plaintiffs' allegations.

       CW6 further alleges

> Rahoul Banerjea was accessing Digimarc's inventory accounts on his own and manipulating the value of the Company's inventory to make it appear that the Company

16 - OPINION AND ORDER

> had more inventory than it actually had.
> Then when Company personnel conducted
> physical inventory counts, there was missing
> inventory.

CW6 does not identify the basis of his knowledge. The Court, therefore, is not sufficiently confident that this allegation is the result of CW6's personal knowledge or that it provides a strong inference of scienter.

CW6 also alleges he was aware there were several meetings between Banerjea, Ranjit, Ford, and Paul Gifford in which they discussed inventory problems; CW6 was present at some of the meetings; and "Ranjit had to have known what was going on with respect to the Company's inventory accounting manipulation." The Ninth Circuit has rejected these kinds of "he-must-have-known" allegations offered to demonstrate scienter under the PSLRA. *See Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425-26 (9th Cir. 1994).

Plaintiffs contend the testimony of the confidential witnesses is consistent, and the witnesses corroborate one another. As the Court in *Metawave* explained, however, "a shared opinion among confidential witnesses does not necessarily indicate either falsity or a strong inference of scienter if the allegations themselves are not specific enough." 298 F. Supp. 2d at 1070 (citing *Nursing Home Pension Fund v. Oracle Corp.*, 242 F. Supp. 2d 671, 682 (N.D. Cal. 2002)). Similarly, a shared opinion does not necessarily indicate either

17 - OPINION AND ORDER

the falsity of or a strong inference of scienter if the allegations themselves are based on hearsay, rumor, or speculation.

The confidential-witness statements in Plaintiffs' Second Amended Complaint relating to inventory issues are the kind that the *Metawave* court found to be insufficient to demonstrate scienter. Accordingly, the Court concludes the confidential- witness statements in Plaintiffs Second Amended Complaint, considered either singly or together, do not create a strong inference of scienter as required by the PSLRA.

**B.   SOX Certifications**

Plaintiffs contend the Court should infer scienter from changes Digimarc made to the language of its SOX certifications and to the "Controls and Procedures" sections of Digimarc's 10-Qs between the first and second quarters of 2003.

**1.   Changes in SOX Certifications**

Plaintiffs allege Digimarc included the following paragraph in the SOX certification in its Form 10-Q for the first quarter ending March 31, 2003, but Digimarc omitted it from the June 30, 2003; September 20, 2003; and March 31, 2004, 10-Qs:

> The registrant's other certifying officer and I have indicated in this quarterly report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and

18 - OPINION AND ORDER

material weaknesses.

Plaintiffs contend the omission of this paragraph from the SOX certification suggests an inference that Davis and Ranjit were aware of internal-control problems that Digimarc did not disclose to investors.

Defendants, however, point out these changes to the SOX certification were mandated by amendments to the Securities and Exchange Commission (SEC) rules, which were effective August 14, 2003. Digimarc, therefore, did not include the above language in its SOX certification after its March 31, 2003, 10-Q and replaced it with different language as required by the SEC regarding changes that have "materially affected the company's internal control over financial reporting." *See* Fed. Reg. 36643-46.

The Court concludes Digimarc's changes to its SOX certifications were mandated by the SEC and, therefore, these changes do not provide any basis for an inference of scienter.

## 2.    Controls and Procedures

Plaintiffs also allege language included in the "Controls and Procedures" section of Digimarc's Form 10-Q for the second quarter of 2003 provides further support for an inference of scienter regarding internal-control problems because it "differs materially" from the language in Digimarc's Form 10-Q for the first quarter of 2003. The language at issue in the

19 - OPINION AND ORDER

second-quarter Form 10-Q provides:

> As of June 30, 2003 our management evaluated, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, the effectiveness of the design and operation of our disclosure controls and procedures. Based on this evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures are effective in timely alerting them to material information required to be included in this report.  Our management also evaluated, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, any charge that occurred in our internal control over financial reporting during the fiscal quarter ended June 30, 2003.  No such change materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

Defendants contend the above language is mandated by the SEC and, therefore, cannot form the basis for an inference of scienter.  Defendants contend the SEC requires every publicly traded company to include this language in their financial statements.  According to Defendants, if the Court concludes this language raises a strong inference of scienter, every CEO and CFO of a publicly traded company who signed financial statements that were later found to be incorrect would be subject to fraud actions.

To support their argument that this provision may provide evidence of scienter, Plaintiffs rely on *In re Lattice Semiconductor Corporation Securities Litigation.*  No. CV04-1255-

20 - OPINION AND ORDER

AA, 2006 WL 538756, at *17 (D. Or. Jan. 3, 2006). In *Lattice*, the plaintiffs alleged the fact that the CEO and CFO signed statements that contained language in its controls and procedure section similar to that at issue here was evidence of at least deliberate recklessness. *Lattice*, 2006 WL 538756, at *17. The defendants argued "if these certifications raised a strong inference of *scienter*, every corporate officer who signed a certification for a . . . filing that was later found to be incorrect would be subject to a securities fraud action." *Id*. The *Lattice* court found the defendants' argument unpersuasive and reasoned:    "'When a corporate officer signs a document on behalf of the corporation, that signature will be rendered meaningless unless the officer believes that the statements in the document are true.'"    *Id*. (quoting *Howard v. Everex Systems, Inc*., 228 F.3d 1057, 1061 (9th Cir. 2000)).    Notwithstanding the fact that its CEO and CFO signed financial statements containing certifications that "disclosure controls and procedures are effective in timely alerting [the CEO and CFO] to material information required to be included in this report," Lattice later admitted its CFO "overrode the internal controls to make incorrect and misleading journal entries."    *Id*.

Here Digimarc has not admitted to any override of internal controls or to creation of misleading journal entries and, as noted, Plaintiffs' allegations are insufficient to

21 - OPINION AND ORDER

establish a strong inference of scienter.  *Lattice*, therefore, is distinguishable from this case.

   **C.   Davis and Ranjit's Sales of Digimarc Stock during the Class Period**

   In its November 30, 2005, Opinion and Order, the Court concluded "Plaintiffs do not include any information regarding the trading history of either Ranjit or Davis prior to the class period.  Without such history, Plaintiffs' allegations of stock sales by the individual Defendants do not provide evidence of scienter."

   In their Second Amended Complaint, Plaintiffs still fail to provide any information on the trading history of Davis or Ranjit for purposes of comparison to the stock sales at issue. Without such information, the Court cannot conclude these stock sales give rise to a strong inference of scienter.  *See In re The Vantive Corp., Sec. Litig.*, 283 F.3d 1079, 1095 (9th Cir. 2002)("When a complaint fails to provide us with a meaningful trading history for purposes of comparison, we have been reluctant to attribute significance to the defendant's stock sales, even when the percentages of stock sold by an insider were far more suspicious than the percentage of stock sold by Jodoin.").  *See also In re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)(court held an insider who traded 75.3% of his holdings over a fifteen-week period had not engaged in suspicious trading due to his trading history);

22 - OPINION AND ORDER

*Ronconi v. Larkin*, 253 F.3d 423, 435-36 (9th Cir. 2001)(court refused to conclude a defendant who sold 98% of her total shares over the class period engaged in suspicious trading in light of her trading history).

In summary, the Court concludes Plaintiffs have not pled "'in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct.'" *Metawave*, 298 F. Supp. 2d at 1065 (quoting *Silicon Graphics,* 183 F.3d at 974). Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiffs' claims under Rule 10b-5 and § 10(b) of the Securities and Exchange Act.

### III. Plaintiffs' Claims that the Individual Defendants Are Liable as "Control Persons" under § 20(a) of the Securities Exchange Act

Plaintiffs allege Davis and Ranjit exercised actual power or control over Digimarc and, therefore, are subject to "control person" liability under § 20(a) of the Securities and Exchange Act.

#### A.    The Law

To show "control person" liability under § 20(a) of the Securities and Exchange Act, a plaintiff must show: (1) "a primary violation of federal securities law" and (2) "the defendant exercised actual power or control over the primary violator." *America West*, 320 F.3d at 945.

Determining who is a controlling person is usually an

23 - OPINION AND ORDER

"intensely factual question, involving scrutiny of the
defendant's participation in the day-to-day affairs of the
corporation and the defendant's power to control corporate
actions." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065
(9th Cir. 2000)(quoting *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th
Cir. 1994)).   In a motion to dismiss, general allegations
concerning an individual defendant's title and responsibilities
are sufficient to establish control.   *In re Adaptive Broadband
Sec. Litig.*, No. 01-1092, 2002 WL 989478, at *18 (N.D. Cal.
Apr. 2, 2002).   *See also In re Cylink Sec. Litig.,* 178 F. Supp.
2d 1077, 1089 (N.D. Cal. 2001); *Marks v. Simulation Sciences*, No.
98-546, 2000 WL 33115589, at *4 (C.D. Cal. Feb. 28, 2000).

**B.   Plaintiffs' § 20(a) Claims Against Ranjit and Davis**

For purposes of Defendants' Motion to Dismiss,
Plaintiffs have made allegations in their Second Amended
Complaint sufficient to establish that Davis and Ranjit in their
positions as CEO and CFO of Digimarc, exercised actual power or
control over any primary violators.   The Court has concluded,
however, that Plaintiffs did not adequately plead a primary
violation of Section 10(b).   The Court, therefore, dismisses
Plaintiffs' Section 20(a) claims against Davis and Ranjit.   *See
In re Metawave*, 298 F. Supp. 2d at 1987 (court dismissed the
plaintiffs' § 20(a) claims upon concluding the plaintiffs had not
adequately pled a primary violation of § 10(b)).

24 - OPINION AND ORDER

## <u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss (#101) the Second Amended Class Action Complaint.

IT IS SO ORDERED.

DATED this 4th day of August, 2006.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

25 - OPINION AND ORDER